**ERICKA COOPER**
6128 Elder Creek Road
Sacramento, California 95824
Telephone: (916) 719-0216
Email: unkledo@icloud.com
Plaintiff In Propria Persona

FILED
OCT 22 2026
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SANTA ROSA DIVISION**

| | | |
|---|---|---|
| In re | ) | **Case No. 24-10545 HLB** |
| | ) | (Substantively Consolidated) |
| LEFEVER MATTSON, | ) | Chapter 11 |
| Consolidated Debtor. | ) | |
| | ) | **Adv. Pro. No. 26-01007 HLB** |
| ERICKA COOPER, | ) | |
| Plaintiff, | ) | **PLAINTIFF'S OPPOSITION TO** |
| v. | ) | **DEFENDANTS' MOTION TO DISMISS** |
| HOME TAX SERVICE OF | ) | **FIRST AMENDED VERIFIED** |
| AMERICA, INC. dba LEFEVER | ) | **COMPLAINT [Dkt. 47]** |
| MATTSON PROPERTY | ) | |
| MANAGEMENT; MICHAEL I. | ) | Date: November 12, 2026 |
| GOLDBERG, solely in his capacity | ) | Time: 2:00 p.m. |
| as Plan Recovery Trustee; | ) | Place: Courtroom 19, 16th Floor |
| BRENDA COMFORT; and | ) | 450 Golden Gate Avenue |
| DOES 1-10, | ) | San Francisco, CA (and via Zoom) |
| Defendants. | ) | Judge: Hon. Hannah L. Blumenstiel |


Case: 26-01007 Doc# 52 Filed: 10/22/26 Entered: 10/22/26 16:11:42 Page 1 of 17

## TABLE OF AUTHORITIES

**Cases**

Akhlaghpour v. Orantes (In re Akhlaghpour), 164 F.4th 1139 (9th Cir. 2026)

Ashcroft v. Iqbal, 556 U.S. 662 (2009)

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)

Blixseth v. Credit Suisse, 961 F.3d 1074 (9th Cir. 2020)

DLI Properties, LLC v. Hill, 29 Cal.App.5th Supp. 1 (2018)

Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280 (2005)

Group XIII Properties LP v. Stockman, 85 Cal.App.5th Supp. 1, 2022 WL 16848164 (App. Div. 2022)

Gruntz v. County of Los Angeles (In re Gruntz), 202 F.3d 1074 (9th Cir. 2000) (en banc)

In re Brawders, 503 F.3d 856 (9th Cir. 2007)

In re Castillo, 297 F.3d 940 (9th Cir. 2002)

In re Crown Vantage, Inc., 421 F.3d 963 (9th Cir. 2005)

In re Yellowstone Mountain Club, LLC, 841 F.3d 1090 (9th Cir. 2016)

Income Estate LLC v. Perez, 117 Cal.App.5th Supp. 1 (2025)

Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988 (9th Cir. 2018)

Kougasian v. TMSL, Inc., 359 F.3d 1136 (9th Cir. 2004)

Lucido v. Superior Court, 51 Cal.3d 335 (1990)

Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950)

NexPoint Advisors, L.P. v. Highland Capital Mgmt., L.P. (In re Highland Capital Mgmt., L.P.), 48 F.4th 419 (5th Cir. 2022)

Phillips v. Goldman (In re Gilman), 176 F.4th 1152 (9th Cir. 2026) (en banc)

Searle v. Allen, 148 F.4th 1121 (9th Cir. 2025)

T.M. v. University of Maryland Medical System Corp., No. 25-197, 608 U.S. ___ (June 18, 2026)

University of Texas v. Camenisch, 451 U.S. 390 (1981)



Case: 26-01007 Doc# 52 Filed: 10/22/26 Entered: 10/22/26 16:11:42 Page 2 of 17

Vella v. Hudgins, 20 Cal.3d 251 (1977)

**Statutes and Rules**

11 U.S.C. §§ 365(h), 1141(d)(3); 28 U.S.C. § 959(a)

Cal. Civ. Code § 1962; Cal. Code Civ. Proc. § 415.46

Fed. R. Civ. P. 9(b), 12(b)(6), 15(a); Fed. R. Bankr. P. 7009, 7012, 7015, 9006(b)(1); Fed. R. Evid. 201

Plan (Dkt. 4151) §§ 5.2.1, 5.2.2, 5.3.9, 6.1.1-6.1.2, 11.3-11.4; Confirmation Order (Dkt. 4225) ¶¶ 10, 22

## I. INTRODUCTION

Defendants ask the Court to dismiss, with prejudice, a complaint about what they did after the Plan took effect. The Effective Date was May 14, 2026. Plaintiff was locked out of 5703 Orange Avenue on May 26 and her household's property was hauled away on June 14 — twelve and thirty-one days later. The motion does not deny those dates. It does not deny that the Plan Recovery Trust approved the eviction in writing, that the Trust paid the vendors, that the lease had been scheduled for assumption at a $0.00 cure, that the amendment removing it was never served on Plaintiff, or that the writ ran before the Plan's own fourteen-day objection window closed. It argues instead that none of this can be heard, for three reasons. Each fails on the Plan's text or on controlling law.

First, the gate. Section 11.3 exculpates acts "in connection with . . . the Chapter 11 Cases," including "the operation of the Debtors' businesses during the Chapter 11 Cases." Defendants' own motion in the main case states that Home Tax Service of America, Inc. ("Home Tax") "dissolved automatically" on the Effective Date. (Dkt. 4587 at 4.) A clause protecting what the Debtors did during the case does not reach a lockout carried out after the Debtor ceased to exist. And if the Court concludes the gate applies at all, section 11.4 says what happens next: a determination by this Court. The FAC asks for it (Count Five), this opposition


Case: 26-01007 Doc# 53 Filed: 10/22/26 Entered: 10/22/26 16:11:42 Page 3 of 17

asks for it, and the Ninth Circuit holds that such leave may be granted after an action is pending. Dismissal is not the remedy the Plan prescribes.

Second, Rooker-Feldman. Four months before this motion was filed, the Supreme Court reaffirmed that the doctrine reaches only suits "complaining of injuries caused by state-court judgments" and "inviting district court review and rejection of those judgments," and expressly left it "as it found it." T.M. v. Univ. of Md. Med. Sys. Corp., No. 25-197, slip op. at 1, 18 (June 18, 2026). The FAC does not ask this Court to vacate the writ. It asks what this Court's Plan did to a lease it listed for assumption, and whether Defendants' post-confirmation conduct — approving, funding, and executing a removal while the Plan's objection period ran, then destroying property after a written preservation demand — is actionable. Those are injuries from Defendants' acts, not from the judgment. Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 293 (2005); Kougasian v. TMSL, Inc., 359 F.3d 1136, 1140-42 (9th Cir. 2004); Searle v. Allen, 148 F.4th 1121, 1128-31 (9th Cir. 2025).

Third, preclusion. The state judgment is a clerk's default for possession only, $0.00, with the lease-forfeiture and rental-agreement-cancellation boxes unchecked. (Bankr. Ex. Q, Dkt. 40 at 163-65.) It decided nothing about the Plan, the schedule of assumed agreements, Confirmation Order ¶ 10, or 11 U.S.C. § 365(h), because no state court was ever told the plaintiff was a chapter 11 debtor. The later orders Defendants cite deny motions without findings. California issue preclusion requires an issue actually litigated and necessarily decided; the party asserting it bears the burden. Lucido v. Superior Court, 51 Cal.3d 335, 341-42 (1990). Defendants have not carried it.

What Defendants ask for should be stated plainly. They seek dismissal with prejudice — an order that no court will ever examine whether a chapter 11 debtor concealed its status from the state court it used to remove a ten-year tenant; whether the estate listed her lease for assumption, deleted it without the notice its


Case: 26-01007 Doc# 52 Filed: 10/22/26 Entered: 10/22/26 16:11:42 Page 4 of 17

own Plan required, and took possession before the Plan's objection period closed; or whether the Trust approved, funded, and carried out that removal and the destruction of her household's property after a written demand to preserve it. The Plan's exculpation was written to protect the good-faith administration of a bankruptcy case. It was not written to foreclose every forum in which that sequence could be heard.

The motion should be denied. If the Court finds any pleading deficiency, Plaintiff requests leave to amend, which Rule 15 freely grants and which Defendants cannot show would be futile.

## II. THE PLAN'S EXCULPATION DOES NOT REACH THIS CONDUCT

### A. Section 11.3 protects acts in the Chapter 11 Cases, not a lockout after the Debtor dissolved.

Section 11.3 exculpates "any act or omission in connection with, relating to, or arising out of the Chapter 11 Cases," and lists what that means: formulating, negotiating, soliciting, confirming and consummating the Plan; administering the Plan and the Cases; "the operation of the Debtors' businesses during the Chapter 11 Cases"; and the disposition of property "to be distributed under the Plan." (Dkt. 47 at 6-7, quoting Plan § 11.3.) Every category describes conduct in the bankruptcy. That is the only kind of conduct a bankruptcy court may exculpate: the Ninth Circuit upheld an exculpation clause in Blixseth v. Credit Suisse, 961 F.3d 1074 (9th Cir. 2020), that was limited to acts taken in the bankruptcy proceeding itself, reasoning that such a clause does not discharge a debt within the meaning of 11 U.S.C. § 524(e). A plan that liquidates a corporate debtor confers no discharge at all, 11 U.S.C. § 1141(d)(3), and nothing in the Plan purports to license new torts after the Effective Date.

Defendants' own filings place the challenged conduct outside the clause. In the main case they state that "[o]n the Effective Date of the Plan, the individual debtors, including Home Tax, dissolved automatically." (Dkt. 4587 at 4, citing


Case: 26-01007 Doc# 52 Filed: 10/22/26 Entered: 10/22/26 16:11:42 Page 5 of 17

Plan § 5.2.2.) The Effective Date was May 14, 2026. (FAC ¶ 16(d); Dkt. 4335.) The writ was executed on May 26; the household's property was removed on June 14. (FAC ¶¶ 23, 31-34; Bankr. Ex. B; State Ex. M.) By Defendants' account, Home Tax had no "business" to "operate" on either date. What remained was a Consolidated Debtor, run by the Trustee as its sole officer (Dkt. 4587 at 4, citing Plan § 5.2.1), clearing a residential parcel it co-owns. That is not the administration of a chapter 11 case. It is a post-confirmation real-estate company removing occupants, and its liability for how it did so is its own.

The Trustee does not claim § 11.3 for himself; he invokes Plan § 5.3.9 and chapter 7 trustee immunities. (Dkt. 47 at 8.) Section 5.3.9 carries the same exception — "gross negligence, willful misconduct, or intentional fraud" — and the en banc Ninth Circuit has now held that quasi-judicial immunity protects a trustee's adjudicative functions, not property management, and that derived judicial immunity must be earned act by act through disclosure, notice to interested parties, and court approval. Phillips v. Goldman (In re Gilman), 176 F.4th 1152 (9th Cir. 2026) (en banc). In re Castillo, 297 F.3d 940 (9th Cir. 2002), on which Defendants rely, predates Gilman, which now states the governing test. Nothing in the record shows disclosure to this Court, notice to Plaintiff, or an order approving the May 26 removal or the June 14 destruction.

**B. The Plan's own safe harbor was never used.**

Section 11.3 presumes good faith for "any act or omission effected with the approval of the Bankruptcy Court." (Dkt. 47 at 7.) Defendants identify no order approving the owner-capacity unlawful-detainer pleading, the May 26 execution, or the June 14 removal. The May 7 Order denied Plaintiff's emergency application (Dkt. 14); it authorized nothing. The Plan instead prescribed a procedure for exactly this situation: a lease on the Schedule of Assumed Agreements is "deemed assumed" pending the Court's ruling on any dispute (Plan § 6.1.2), and an amendment removing it triggers notice to the counterparty, a fourteen-day


Case: 26-01007 Doc# 52 Filed: 10/22/26 Entered: 10/22/26 16:11:42 Page 6 of 17

post-Effective-Date objection period, and a hearing on any unresolved objection (Confirmation Order ¶ 10; Dkt. 4332 at 2). Plaintiff's lease was listed for assumption at a $0.00 cure in December 2025 (Dkt. 3176); her entry was removed on April 7 by an amendment whose notice disclosed no objection right (Dkts. 4163, 4190, 4201); the remaining Unit 5703 entry was removed on May 13 by an amendment whose certificate of service lists no mailing to her (Dkts. 4332, 4367); and the writ ran on May 26, two days before the window those documents describe would close. (FAC ¶¶ 14-18.) The safe harbor protects parties who ask this Court first. Defendants did not ask.

**C. Section 959(a) independently permits suit for carrying on the business.**

A trustee or debtor in possession "may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property." 28 U.S.C. § 959(a); FAC ¶ 4. The same May 13 amendment that removed Unit 5703 added the adjoining Unit 5701 to the Schedule of Assumed Agreements for new tenants at a $0.00 cure. (Dkt. 4332, Exs. A-2, A-3.) An estate that was placing tenants in one half of a duplex while removing them from the other was operating a rental business, not winding one down. Whether § 959(a) ultimately applies is a merits question; it cannot be resolved against Plaintiff on a Rule 12 motion that does not mention it.

**D. Whether Home Tax and Ms. Comfort are "Exculpated Parties" for these acts is itself disputed.**

The Plan's definition reaches agents of the Debtors only where the agent "assumed fiduciary obligations of the principal." (Dkt. 47 at 7, quoting Plan Ex. A.) The lease names Home Tax, under its fictitious name, as "PROPERTY MANAGER NAME/AUTHORIZED AGENT" for other landlords; the unlawful-detainer complaint pleads Home Tax's interest as "owner"; the estate's own schedule lists the owners as LeFever Mattson and non-debtor Kristina Melick, each fifty percent. (FAC ¶¶ 19-20; State Exs. A-C; Bankr. Exs. D, S, T-U.) Ms. Comfort is


Case: 26-01007 Doc# 52 Filed: 10/22/26 Entered: 10/22/26 16:11:42 Page 7 of 17

alleged to have engaged and paid the vendors who performed the lockout and the removal. (FAC ¶¶ 10, 23, 32-34; State Ex. M.) Whether either defendant acted as a fiduciary agent of a Debtor — as opposed to in Home Tax's own pleaded capacity as owner, or for the post-confirmation Consolidated Debtor — cannot be decided on the pleadings in Defendants' favor.

**E. The course of conduct began before the Effective Date and was completed with notice of this proceeding.**

Defendants may answer Part A by pointing out that the schedule amendments occurred before the Effective Date. That is true, and it is the problem, not the defense. While the Unit 5703 lease was on the Schedule of Assumed Agreements it was deemed assumed pending any ruling of this Court (Plan § 6.1.2); the only lawful path to rejection ran through notice to the counterparty, a fourteen-day post-Effective-Date objection period, and a hearing (Confirmation Order ¶ 10; Dkt. 4332 at 2). The estate did not take that path. It deleted the lease from the schedule by filings whose notices omitted Plaintiff (Dkts. 4163, 4190, 4201, 4332, 4367) and, in the same May 13 filing, added the adjoining Unit 5701 for new tenants (Dkt. 4332, Exs. A-2, A-3). Those are acts in the bankruptcy, and they are the acts the exculpation excludes: a party that skips the Plan's own procedure for extinguishing a counterparty's rights is not administering the Plan in good faith.

Then, with that procedure skipped, the sequence crossed the Effective Date and was completed with full knowledge of this proceeding. Plaintiff filed this adversary on May 5, 2026, before the Effective Date and before the lockout, placing the lease's status, the owner-capacity pleading, and the service defects before this Court and the Trustee (Adv. Dkt. 1; Dkt. 14). The Effective Date came May 14; by Defendants' own account Home Tax dissolved that day (Dkt. 4587 at 4). The Trust nonetheless approved execution (FAC ¶ 7; Bankr. Ex. A), and on May 26 a writ issued in the name of a dissolved non-owner — whose certification of section 415.46 service the filed proof of service contradicts — was run against


Case: 26-01007 Doc# 52 Filed: 10/22/26 Entered: 10/22/26 16:11:42 Page 8 of 17

the Premises, two days before the objection window the Trust had never told Plaintiff about would close. (FAC ¶¶ 22-24, 30-31; Bankr. Ex. B; State Ex. I.) The destruction of the household's property followed on June 14. (FAC ¶¶ 32-34; State Ex. M.) The pre-Effective-Date steps are not protected because they were themselves the misconduct; the post-Effective-Date steps are not protected because they fall outside the clause; and the whole was carried out after this Court had been asked to decide the very questions Defendants now say no court may hear.

## III. IF THE GATE APPLIES, THE PLAN CALLS FOR A DETERMINATION, NOT DISMISSAL

Section 11.4 provides that a party "must first seek a determination that the claims asserted in such action are excluded from the exculpation provisions herein and permission from the Bankruptcy Court to prosecute such action," and that this Court "shall retain exclusive jurisdiction to determine the scope and effect of any release or exculpation." (Dkt. 47 at 7.) Plaintiff has sought that determination from the first filing: her original complaint, filed May 5, 2026 — before the Effective Date and before the lockout — asked this Court to decide the lease's status and who had authority to act on it (Adv. Dkt. 1 ¶¶ 13-17); the FAC pleads the determination as Count Five (FAC ¶¶ 12-13, 39); and Plaintiff renews the request here. Defendants' position is that the request cannot be made in the proceeding that raises it, so the proceeding must be dismissed with prejudice. The Plan says the opposite. It reserves the question to this Court and tells the claimant to bring it here.

The Ninth Circuit has rejected the sequencing argument Defendants make. In Akhlaghpour v. Orantes (In re Akhlaghpour), 164 F.4th 1139 (9th Cir. 2026), the court held that a bankruptcy court may grant Barton leave after the underlying action has been commenced in another forum, reasoning that requiring dismissal and refiling would needlessly fragment related claims, and that granting such

leave does not offend Rooker-Feldman because it removes a jurisdictional bar without modifying any judgment. The same logic governs a plan gatekeeper, which is a Barton-type device: the court asks whether the proposed claims are colorable, authorizes them if so, and adjudicates them if it has jurisdiction. See NexPoint Advisors, L.P. v. Highland Capital Mgmt., L.P. (In re Highland Capital Mgmt., L.P.), 48 F.4th 419 (5th Cir. 2022). And Barton itself is satisfied: this action is pending in the appointing court. In re Crown Vantage, Inc., 421 F.3d 963, 970 (9th Cir. 2005); In re Yellowstone Mountain Club, LLC, 841 F.3d 1090, 1095-98 (9th Cir. 2016).

The threshold showing is a colorable claim of willful misconduct, gross negligence, or intentional fraud — not proof of one. The record pleads it in dates and docket numbers: the estate listed both counterparties at $0.00 cure (Dkt. 3176); deleted Plaintiff by an amendment whose notice disclosed no objection right (Dkts. 4163, 4190, 4201); never served her with the Confirmation Order containing that right (Dkt. 4254); deleted the unit by an amendment whose certificate omits her (Dkts. 4332, 4367); recorded a deed conveying the entire fee to the Consolidated Debtor, omitting the non-debtor co-owner, on May 19, inside the window (FAC ¶ 22; Bankr. Exs. N, P); executed the writ on May 26 on the Trust's written approval (FAC ¶ 7; Bankr. Ex. A); and removed the household's property on June 14, thirteen days after counsel acknowledged a written demand to preserve it (FAC ¶¶ 32-34; State Ex. M). The Trustee's own motion in the main case supplies the motive Defendants say is missing: "The Consolidated Debtor cannot effectively market and sell the property if there is a cloud on title." (Dkt. 4587 at 9; Fed. R. Evid. 201.) A party that lists a tenant as a counterparty, removes her without the notice its own Plan requires, takes possession before the window closes, and sells the result is, at a minimum, colorably alleged to have acted willfully.

Plaintiff therefore requests, in the alternative to denial, that the Court (1)


Case 26-01007 Doc# 52 Filed 10/22/26 Entered 10/22/26 16:11:42 Page 10 of 17

determine that the claims pleaded in the FAC are excluded from § 11.3 as post-Effective-Date conduct, or (2) determine that the FAC states colorable claims of willful misconduct and grant permission to prosecute them under § 11.4 and, as to the Trustee, under § 5.3.9. If the Court prefers a separately noticed request, the appropriate order is a short stay or denial without prejudice to that request — not dismissal with prejudice of a proceeding that was pending when the Plan became effective.

## IV. THE FAC PLEADS SPECIFIC, DATED CONDUCT

Under Rule 12(b)(6), well-pleaded facts are accepted as true; the question is plausibility. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Defendants quote Iqbal's 'threadbare recitals' language but pinpoint page 663; it appears at page 678. (Dkt. 47 at 9.) The error alone does not decide this motion. More importantly, the FAC is not 'conclusory' (Dkt. 47 at 10). It identifies actors, dates, sworn statements, emails, the lease, UD pleadings, bankruptcy schedules, and transaction records. Those documents, incorporated in the FAC or subject to judicial notice, include the December 2025 assumption schedule; April 7 and May 13 amendments and service certificates; the Confirmation Order's service list; the Effective Date notice; the May 19 deed and Assessor's July 9 rejection; the Trust's June 1 approval; and the May 26 vendor receipt and June 14 invoice. (FAC ¶¶ 14-23, 32-34; Bankr. Exs. A, N, P, Q; State Ex. M; Dkts. 3176, 4163, 4190, 4201, 4254, 4332, 4335, 4367.) Rule 9(b), applied by Bankruptcy Rule 7009, permits intent to be alleged generally; the acts supporting intent are dated.

Defendants call the schedule amendments "ministerial." (Dkt. 47 at 6.) The Plan does not. Removing a lease from the Schedule of Assumed Agreements is the act that converts a deemed-assumed lease into a rejected one, and the Plan conditions it on notice, a fourteen-day objection period, and a hearing. (Plan §§ 6.1.1-6.1.2; Confirmation Order ¶ 10.) Doing it without the notice, and taking possession before the period runs, is not ministerial; it is the conduct the FAC challenges.


Case: 26-01007 Doc# 52 Filed: 10/22/26 Entered: 10/22/26 16:11:42 Page 11 of 17

Defendants also say the lockout was "valid legal process." (Dkt. 47 at 10.) The writ's certification that the prejudgment claim of right was served under Code of Civil Procedure section 415.46 is contradicted by the filed proof of service, which records a single posting and a certified mailing to the wrong ZIP code, undelivered. (FAC ¶¶ 22, 24, 30; Bankr. Ex. B; State Ex. I.) Whether that process was valid as to Plaintiff is disputed; it cannot be assumed against her on a motion to dismiss.

The state-law ground pleaded against the nonpayment eviction is equally specific. When Plaintiff asked in writing in September 2025 who owned the property, management answered with a 2021 ownership notice that omitted the July 2024 conveyance of a fifty-percent interest to Ms. Melick, and stated the three-day notice was "solely for unpaid rent." (FAC ¶¶ 19-20, 27; Bankr. Exs. D, T-U.) Civil Code section 1962(c) requires a successor owner or manager to give the updated disclosures within fifteen days and bars a nonpayment eviction for rent accrued during noncompliance; compliance is strict. Group XIII Props. LP v. Stockman, 85 Cal.App.5th Supp. 1, 2022 WL 16848164 (App. Div. 2022); DLI Props., LLC v. Hill, 29 Cal.App.5th Supp. 1 (2018). And a manager that sues as "owner" must establish its authority to prosecute for possession on the owner's behalf. Income Estate LLC v. Perez, 117 Cal.App.5th Supp. 1 (2025). The unlawful-detainer record contains no delegation, assignment, or authorization from either record owner. (FAC ¶¶ 19, 23.) These are facts, with documents, not labels.

## V. ROOKER-FELDMAN DOES NOT APPLY

Rooker-Feldman is "confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon, 544 U.S. at 284. T.M. applied that rule to a plaintiff who asked a federal court to declare a state consent order


Case: 26-01007 Doc# 52 Filed: 10/22/26 Entered: 10/22/26 16:11:42 Page 12 of 17

"unconstitutional, unenforceable, and void ab initio" and to enjoin its enforcement — the "paradigm situation" — and stated that the decision "neither expands nor constrains" the doctrine but "leaves the doctrine as it found it." T.M., slip op. at 8, 18. The same opinion notes that a companion suit involving "the same parties and facts" did not implicate Rooker-Feldman because it "did not seek review and rejection" of the state order. Id. at 16-18 & n.11. That is this case.

The FAC does not ask this Court to vacate the UD-110, recall the writ, or declare the state court erred. It pleads injuries caused by Defendants' acts: pleading a capacity Home Tax did not hold; removing Plaintiff's lease from the assumption schedule without the Plan's notice; approving, funding, and executing a removal while the objection period ran; and destroying property after a written demand to preserve it. (FAC ¶¶ 1-3, 14-25, 32-45.) A claim that an adverse party's wrongful act — including extrinsic fraud — caused injury is not an appeal of the judgment. Kougasian, 359 F.3d at 1140-42 (claims alleging "wrongful acts by the defendants" not barred even where the same torts were litigated and decided in state court); Searle, 148 F.4th at 1128-31 (claims based on a right "distinct from and survives the state court" judgment not barred). Where a plaintiff presents an independent claim, even one that denies a legal conclusion a state court reached, the doctrine does not apply and state preclusion law decides whether the defendant prevails. Exxon, 544 U.S. at 293.

Two further points. First, the only questions Plaintiff asks this Court to decide — what the Plan did to the lease, whether the Plan's procedure was followed, and what rights § 365(h) preserves — are questions the state court never had and could not answer, because it was never told the plaintiff before it was a chapter 11 debtor. The bankruptcy court's determination of the effect of its own plan and orders is not review of a state judgment. Gruntz v. County of Los Angeles (In re Gruntz), 202 F.3d 1074, 1079-83 (9th Cir. 2000) (en banc). Second, this adversary was commenced May 5, 2026, before the lockout and before the Effective Date;


Case: 26-01007 Doc# 52 Filed: 10/22/26 Entered: 10/22/26 16:11:42 Page 13 of 17

the claims arising from post-confirmation conduct could not have been reviewed by any state court because the conduct had not occurred. Defendants' further argument — that Plaintiff raised her arguments in state court three times and lost — is a preclusion argument, not a jurisdictional one. Searle, 148 F.4th at 1133-34 (Rooker-Feldman is distinct from preclusion). It is addressed next.

The May 7 Order does not change the analysis. It denied an application for an order shortening time and a temporary restraining order on a likelihood-of-success assessment made two days after filing, without an answer, discovery, or evidentiary hearing. (Dkt. 14.) Findings at the preliminary-injunction stage are not binding at the merits. Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981). The order did not identify who the landlord was — it referred to "her landlord, whoever that might be" — and did not decide Home Tax's authority, the assumption schedule, ¶ 10, or § 365(h). (Dkt. 14 at 2-4.) The question it recited remains the question before the Court.

## VI. DEFENDANTS HAVE NOT ESTABLISHED PRECLUSION

California issue preclusion requires an identical issue, actually litigated and necessarily decided, in a final decision on the merits, against a party or privy; the proponent bears the burden. Lucido, 51 Cal.3d at 341-42. Defendants' heading says "claim preclusion"; their analysis is issue preclusion. (Dkt. 47 at 11-12.) Either way, three elements are missing.

No issue was actually litigated or necessarily decided. The judgment is a clerk's default: possession only, $0.00, lease forfeiture and rental-agreement cancellation unchecked. (Bankr. Ex. Q, Dkt. 40 at 163-65.) A default adjudicates nothing on the merits, and the California Supreme Court holds that unlawful-detainer judgments carry limited preclusive effect except where the record shows a full and fair adversary adjudication of the issue. Vella v. Hudgins, 20 Cal.3d 251, 255-57 (1977). The three later orders Defendants attach deny motions; none contains a finding on ownership, agency, authority, forfeiture, the Plan's notice procedure, or

§ 365(h). (RJN Exs. 3, 5, 7.) Defendants' request for judicial notice asks the Court to notice that these filings exist, not that their contents are true (Dkt. 48 at 2), and judicial notice of a filing does not establish the truth of assertions in it or that the court adopted them. Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 999-1003 (9th Cir. 2018). That a party argued an issue does not establish that the court necessarily decided it. Lucido, 51 Cal.3d at 341.

The issues are not identical. The unlawful detainer asked whether a tenant should be removed for nonpayment. This proceeding asks whether a confirmed plan's notice-and-objection procedure was followed before a listed lease was rejected, whether § 365(h) preserved possession, who had authority to act for the record owners, and whether post-confirmation conduct — including the June 14 destruction, which post-dates every state order — was willful. The state court was never presented with the bankruptcy, the schedules, the Confirmation Order, or the Plan, because the plaintiff before it did not disclose them. (FAC ¶¶ 24-25.) An issue a court was never told existed is not one it necessarily decided.

The parties are not the same. The Trustee and Ms. Comfort were not parties to the unlawful detainer; Defendants do not attempt to show privity for the separately pleaded claims against them. And claim preclusion fails for the additional reason that a summary possession proceeding could not have adjudicated conduct that had not yet occurred. Vella, 20 Cal.3d at 255-57.

## VII. THE SCOPE OF THE EXCULPATION IS ALREADY BEFORE THIS COURT

One development since the motion was filed bears on the remedy. On October 6, 2026, the Trustee moved in the main case for an order enforcing §§ 11.3-11.4 against the related state action brought by two unnamed occupants of Unit 5703, Bolden v. Melick, Sacramento Superior Court No. 26CV019064, on the ground that the Plan bars that action as well; that motion has been continued to December 3, 2026. (Dkts. 4587, 4592.) The Trustee has thus placed the scope of § 11.3


Case: 26-01007 Doc# 52 Filed: 10/22/26 Entered: 10/22/26 16:11:42 Page 15 of 17

before this Court in two proceedings at once, and the state court's proceedings against Home Tax await the answer. Dismissing this adversary with prejudice would not resolve that question; it would remove the one proceeding in which the lease counterparty herself can be heard on it. The efficient course — and the one the Plan contemplates — is for this Court to decide the scope and effect of the exculpation on the record before it.

## VIII. ALTERNATIVELY, LEAVE TO AMEND SHOULD BE GRANTED

Leave to amend is to be "freely given," Fed. R. Civ. P. 15(a)(2); Fed. R. Bankr. P. 7015, and dismissal with prejudice is improper unless amendment would be futile. Defendants make no futility showing. If the Court finds any claim insufficiently pleaded, Plaintiff can amend to (1) set out the assumption, amendment, service, deed, approval, execution, and removal sequence paragraph by paragraph with the docket and exhibit citation for each; (2) plead the § 11.3/§ 11.4 determination as a stated request for relief rather than a count; (3) conform the parties named in the summons to the parties named in the complaint, which Defendants note were inconsistent (Dkt. 47 at 5) — a clerical matter that prejudiced no one; and (4) plead the administrative-expense request in the form the Court directs, or withdraw it in favor of the pending proof of claim (No. 1971). None of this is new; it is the record already before the Court, reorganized.

Finally, Plaintiff renews the request made in the FAC that the Court treat her May 5 filing and the FAC as a timely Contract Objection to the rejection of the Unit 5703 lease, or enlarge the time for one under Bankruptcy Rule 9006(b)(1), because the deadline was never served on her. A deadline cannot bind a known party who received no notice of it. Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314-15 (1950); In re Brawders, 503 F.3d 856, 867-68 (9th Cir. 2007). Rejection, if it occurred, does not extinguish a lessee's right to remain in possession. 11 U.S.C. § 365(h)(1)(A)(ii).


Case: 26-01007 Doc# 52 Filed: 10/22/26 Entered: 10/22/26 18:11:42 Page 16 of 17

## IX. CONCLUSION AND RELIEF REQUESTED

Plaintiff respectfully requests that the Court:

1. Deny the Motion to Dismiss (Dkt. 47) in its entirety;

2. Determine, under Plan §§ 11.3-11.4 and Confirmation Order ¶ 22, that the claims pleaded in the First Amended Verified Complaint are excluded from the Plan's exculpation as post-Effective-Date conduct, or alternatively that they state colorable claims of willful misconduct, and grant permission to prosecute them against each Defendant, including the Trustee under Plan § 5.3.9;

3. Alternatively, if the Court finds any claim insufficiently pleaded, deny dismissal with prejudice and grant leave to file a Second Amended Complaint within twenty-one days;

4. Treat Plaintiff's May 5, 2026 complaint and the First Amended Verified Complaint as a timely Contract Objection concerning the Unit 5703 lease, or enlarge the time to file one under Bankruptcy Rule 9006(b)(1); and

5. Set a scheduling conference and such further proceedings as the Court deems appropriate.

Dated: October 22, 2026

[signature]

ERICKA COOPER

Plaintiff In Propria Persona



Case: 26-01007 Doc# 52 Filed: 10/22/26 Entered: 10/22/26 16:11:42 Page 17 of 17